IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESSIE WASHINGTON,            )
                              )
         Plaintiff,           )
                              )
    v.                        )    No.  10 C 4409
                              )
KASS MANAGEMENT SERVICES,     )
et al.,                       )
                              )
         Defendants.          )

MEMORANDUM OPINION AND ORDER

Jessie Washington ("Washington") has brought suit against Kass Management Services ("Kass"), Chicago Metropolitan Housing Development Corporation ("Metropolitan Housing") and Chicago Housing Authority ("CHA"), seeking injunctive relief and damages under the Fair Housing Act ("FHA," 42 U.S.C. §§3601 to 3631) and Section 504 of the Rehabilitation Act ("Section 504," 29 U.S.C. §794(a)).  This opinion addresses CHA's motion for its dismissal as a defendant under the auspices of Fed. R. Civ. P. ("Rule") 12(b)(6).  For the reasons stated hereafter, the motion is denied.

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) a party may move for dismissal of a complaint on the ground of "failure to state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) was the first case to repudiate, as overly broad, the half-century-old Rule 12(b)(6) formulation announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." And post-Twombly cases have further reshaped a new Rule 12(b)(6) standard.

First Twombly, 550 U.S. at 570 held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555). Then Erickson v. Pardus, 551 U.S. 89 (2007)(per curiam) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) provided further Supreme Court enlightenment on the issue.

Before Iqbal our Court of Appeals, in Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) described Twombly and Erickson as establishing "only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." And more recently Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) has confirmed that the Airborne Beepers reading of pleading law post-Twombly and post-Erickson remains accurate after Iqbal. Brooks, id. at 581 describes Iqbal as "admonishing those plaintiffs who merely parrot the statutory language of the claims that they are

2

pleading (something that anyone can do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more."

Familiar Rule 12(b)(6) principles--still operative under the new pleading regime--require the district court to accept as true all of Washington's well-pleaded factual allegations, with all reasonable inferences drawn in his favor (<u>Christensen v. County of Boone</u>, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)).[1]

**Factual Background**

Washington resides in an apartment at 900 North Kingsbury in Chicago (¶2). Metropolitan Housing owns a number of units in the same building ("Domain Lofts"), including the one occupied by Washington (C. Mem. 2). Kass manages those units for Metropolitan Housing (<u>id</u>.)

CHA receives grants from the Department of Housing and Urban Development ("HUD") to support public housing in Chicago (¶¶7-8). CHA in turn provides subsidies to entities such as Metropolitan Housing to provide such public housing (C. Mem. 2).

In December 2003 Metropolitan Housing entered into a Domain Lofts Regulatory and Operating Agreement ("Agreement," C. Mem. Ex. D) with CHA under which CHA agreed to provide Metropolitan Housing with annual public housing subsidies for 16 units at

---

[1] This opinion cites to CHA's original supporting memorandum as "C. Mem.," to Washington's responsive memorandum as "W. Mem." and to CHA's reply memorandum as "C. R. Mem."

3

Domain Lofts (id.)  Washington lives in one of those subsidized units (¶8).

In August 2007 Washington, after taking recently prescribed medication for depression, fell asleep while cooking a pork chop in a frying pan (¶¶14-20).  While Washington was sleeping, the pork chop burned and the microwave above the stove was damaged (¶¶20-21).  Washington was later served with a notice of termination, and an eviction action was then filed against him (¶¶22-23).  Washington claims that the filing of the eviction action as well as subsequent refusals to provide reasonable accommodation for his condition of depression constitute discrimination and failure to accommodate under FHA and Section 5 (¶¶48-63).

**Agency Relationship**

CHA argues that because it has no principal-agent relationship with Metropolitan Housing, it cannot be held vicariously liable for any of the actions of Metropolitan Housing and its agents (C. Mem. 5).  Washington advances the polar opposite of that position (W. Mem. 1).

What the parties do agree upon is that vicarious liability under FHA is determined under the principles of traditional agency law (Meyer v. Holley, 537 U.S. 280, 290-91 (2003)).[2]  And

---

[2] Although both sides focus on FHA, Washington does not dispute CHA's contention that the same standard applies under Section 504 (C. Mem. 4).

4

because both federal common law and Illinois law follow the Restatement of Agency (Opp v. Wheaton Van Line, Inc., 231 F.3d 1060, 1064 (7th Cir. 2000)), this opinion will look to the Restatement as well.

At the threshold, Restatement (Third) of Agency §1.01 (2006) (hereafter simply "Restatement") defines agency this way:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

For that purpose a party "manifests assent or intention through written or spoken words or other conduct" (id. §1.03).

CHA urges the absence of an agency relationship between it and Metropolitan Housing because such a relationship is expressly disclaimed in Agreement §§13(b) and 14(h) (C. Mem. 2-3). But as Washington rightly points out, Restatement §1.02 requires a broader view:

> An agency relationship arises only when the elements stated in §1.01 are present. Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling.[3]

In this instance that means that Agreement §§13(b) and 14(h) do

---

[3] [Footnote by this Court] Our Court of Appeals has likewise found that a disclaimer in a contract does not end the inquiry into a possible agency relationship in the FHA context (City of Chi. v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1097 (7th Cir. 1993)).

5

not end the debate--instead they are only part of the total picture painted by the Agreement in real world terms.

Neither side can really take exception to that broader perspective, because each seeks to derive support from the Agreement in defining the relationship between CHA and Metropolitan Housing. Thus CHA places understandable reliance on Agreement §14(h),[4] which reads in relevant part:

> Neither Party an Agent. Nothing in this Agreement shall be deemed to appoint either Owner [Metropolitan Housing] or the Authority [CHA] as an agent for or representative of the other, and neither one shall be authorised to act on behalf of the other with respect to any matters.

Such an express denial of an agency relationship establishes a strong presumption for Washington to overcome. But Washington is able to do just that by pointing to the actual operational relationship as spelled out throughout the Agreement and as carried out by the parties.[5]

---

[4] In contrast, CHA's effort to invoke Agreement §13(b) as well is misplaced. As W. Mem. 4 points out, the language in that section mirrors relevant federal regulations and, most importantly, discusses only the relationship between mixed finance entities (such as Metropolitan Housing) and HUD--not between mixed finance entities and local housing authorities such as CHA.

[5] Indeed, the disclaimer of agency in Agreement §14(h), when viewed through the lens of the rest of that document that manifests all the classic characteristics of an agency relationship, puts the reader in mind of one of the sayings attributed to Abraham Lincoln that points up the fallacy of blind

Interestingly, Agreement §3(c) describes the relationship between CHA and Metropolitan Housing as a "partnership" (essentially Washington's position--see W. Mem. 1)--and it is of course the essence of the relationship between partners that each acts as an agent for the other. As J. William Callison & Maureen A. Sullivan, <u>Partnership Law and Practice</u> §1:1 (2010) explains:

> Partnership has roots in ancient law. It is closely related to the law of agency because each partner is an agent for the other partners and for the partnership business. Thus, principles of agency law, specifically as applied to partnership, must be considered in determining the existence of a partnership, the partners' power to bind the partnership, and the termination of the agency relationship.

But quite apart from the matter of labels, the Agreement sets forth a number of conditions that Metropolitan Housing must meet to receive its subsidy payment from Housing Agency (W. Mem. 5-9) and that undercut the Agreement §14(h) disclaimer. Those conditions include, but are not limited to, performance of administrative requirements subject to re-delegation (Agreement §3(f)(ii)); federal, state and local legal compliance (<u>id</u>. §3(a)); approval of management plans (<u>id</u>. §3(e)) and of any

---

adherence to the tyranny of labels:

> If you call a tail a leg, how many legs has a dog?
> Five? No, calling a tail a leg don't make it a leg.

Here, of course, we have the flip side of that anecdote: "calling a relationship a non-agency don't make it a non-agency."

7

additional encumbrances (id. §9(b)); maintenance of records on CHA's system (id. §3(e)); and use of CHA mandated rent calculations (id. §3(I)).

Those conditions make it plain that, despite the disclaimer in Agreement §14(h), CHA maintains substantial control over Metropolitan Housing's actions and the latter carries out those functions for CHA--functions that in large part represent responsibilities that CHA owes to HUD. To say that Metropolitan Housing is not serving as CHA's agent under those circumstances appears to ignore reality, for such an arrangement is the hallmark of the principal-agent relationship.[6]

Seeking to explain away the import of that laundry list, CHA contends--but without citation--that such conditions merely memorialize federal, state and local legal obligations already incumbent on an entity in Metropolitan Housing's position (C. R. Mem 4-5). Quite apart from the unlikelihood that many of the conditions listed by Washington are required by federal, state or local law,[7] the Agreement's provisions that give effect to such

---

[6] There may be some reason for the inclusion of the disclaimer as part of the final paragraph (captioned "Miscellaneous") of the 36-page Agreement, but CHA has not suggested any and this Court is not called on to speculate on the subject.

[7] While many of the relevant clauses in the Agreement are phrased broadly in terms of legal compliance, the details of the methods used to maintain such compliance are often at the discretion of CHA and not specifically required by law.

8

requirements have meaning precisely because they create contractual enforceability on the part of the partner to whom the duties run, something that noncontractual legal requirements do not confer. Such contractual obligations, especially when they are as detailed as in the Agreement, bring into play the principle exemplified by the Restatement §1.02 provision that the characterization contained in an agreement is not controlling.

CHA also cavils at Washington's citation to parts of the Agreement other than the disclaimer, arguing that this Court must apply Illinois contract law in interpreting the Agreement (C. R. Mem. 3). While CHA correctly suggests that Illinois law requires this Court to focus on the contract language, the fact is that considering <u>all</u> of the Agreement's relevant language is called for by Restatement §1.02--and that is in total compliance with the requirement of Illinois law.

Finally, CHA contends that the subsidies at issue here do not merit a finding of an agency relationship (C. Mem. 5). CHA itself, however, admits that the cases it cites discuss "solely providing subsidy payments to public housing authorities" (<u>id</u>.)-- that is, the relationship between <u>HUD</u> and authorities such as CHA--and not situations involving the type of conditions at issue here or involving the relationship between local public housing authorities and their potential agents (C. R. Mem. 5-6).

Although CHA suggests that there is a relevant analogy to be

drawn (id.), a review of the out-of-circuit cases that its counsel cite reveals that all of them deal with a different statutory context, focus on the federal nature of HUD and, most importantly, do not involve subsidies with strict conditions attached (see e.g., Staten v. Hous. Auth. of the City of Pittsburgh, 638 F.2d 599, 602-04 (3d Cir. 1980)). For the reasons set out here, it is surely plausible (at a minimum) that an agency relationship exists between CHA and Metropolitan Housing. Of course, the extent of that agency relationship and the liability associated with it remain to be determined as this case moves forward.

## Conclusion

For the foregoing reasons, CHA's Rule 12(b)(6) motion is denied. Because the Agreement plausibly connotes an agency relationship between CHA and Metropolitan Housing, CHA cannot be dismissed from this action. Finally, a status hearing is set for 9 a.m. May 4, 2011 to discuss the future course of this litigation.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 18, 2011